UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ProGrowth Bank, Inc.                                              Civil No. 07-1577 (DWF/AJB)

                Plaintiff,

v.                                                                                **MEMORANDUM
                                                                                  OPINION AND ORDER**

Wells Fargo Bank, N.A.; and
Global One Financial, Inc.,

                Defendants.

---

Robert C. Moilanen, Esq., Richard T. Ostlund, Esq., and Shannon M. Awsumb, Esq., Anthony Ostlund & Baer, PA, counsel for Plaintiff.

Joseph C. Chancey, Esq. and Kelleen Huang Hubbs, Esq., Drew Eckl & Farnham, LLP, and Jennifer E. Ampulski, Esq., Meagher & Geer, PLLP, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court pursuant to cross-motions for summary judgment. In its Complaint, ProGrowth Bank, Inc. ("ProGrowth") asserts claims for declaratory judgment and conversion. Both ProGrowth and Defendants Global One Financial, Inc. ("Global One") and Wells Fargo Bank, N.A. ("Wells Fargo") seek summary judgment on ProGrowth's claim for declaratory judgment. In addition, Global One and Wells Fargo (collectively, the "Defendants") seek summary judgment on ProGrowth's conversion claim. For the reasons set forth below, the Court grants ProGrowth's motion and denies Defendants' motion.

**BACKGROUND**

This case arises out of separate and unrelated loans that Global One and ProGrowth provided to Christopher Hanson ("Hanson") and/or the Christopher Hanson Insurance Agency (the "Agency"). Hanson, a former Minnesota resident who currently resides in Missouri, owns and operates the Agency. Hanson secured the loans at issue in this case by the same collateral. Specifically, Hanson secured both loans with two annuity contracts (the "Annuity Contracts") that he owned with Fidelity & Guaranty Life Insurance Company ("Fidelity & Guaranty"). The Annuity Contracts were valued at $1 million and identified as "L9E00015" and "L9E00016," respectively.

On September 8, 2005, Global One and the Agency entered into a Promissory Note and Security Agreement (the "Note") pursuant to which Global One loaned the Agency $1 million. As security for the Note, Hanson executed two Collateral Assignments of Annuity Contracts and Security Agreements ("Collateral Assignments"), dated September 8, 2005, in which Hanson assigned his interest in the Annuity Contracts to Global One. On September 8, 2005, Wells Fargo, acting as collateral agent for Global One, filed a financing statement (the "September 8, 2005 financing statement") with the Secretary of State of Missouri, in which it identified the "Debtor" as "Christopher J. Hanson" and described the collateral as follows:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising, and all proceeds and products in that certain Annuity Contract No.: LE900015 issued by Lincoln Benefit Life in the name of Debtor . . . .

(Aff. of Bradley Baker ("Baker Aff."), Ex. C.)

On September 16, 2005, Wells Fargo, acting as collateral agent for Global One, filed another financing statement (the "September 16, 2005 financing statement") with the Secretary of State of Missouri, identifying the debtor as "Christopher J. Hanson" and describing the covered collateral as:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising, and all proceeds and products in that certain Annuity Contract No.: L9E00016 issued by Lincoln Benefit Life in the name of Debtor . . . .

(Baker Aff., Ex. C.)  Both the September 8, 2005, and September 16, 2005 financing statements (the "September 2005 financing statements") erroneously identified Lincoln Benefit Life rather than Fidelity & Guaranty as the issuer of the Annuity Contracts. Additionally, the September 8, 2005 financing statement incorrectly referenced the annuity number as "LE900015" instead of "L9E00015."

The September 2005 financing statements were not the only financing statements that Wells Fargo filed in Missouri during September 2005 that related to different annuity contracts.  Specifically, Wells Fargo filed financing statements regarding at least two other Lincoln Benefit Life annuity contracts, one on September 8, 2005, for Lincoln Benefit Life Annuity Contract No. LE900014 and one on September 28, 2005, for Lincoln Benefit Life Annuity Contract No. LBCA114657.

3

Then, in early 2006, Hanson approached ProGrowth seeking to obtain a loan for over $1.7 million and identified the Annuity Contracts as collateral. On February 9, 2006, Hanson assigned his interest in the Annuity Contracts to ProGrowth in order to obtain an advance of approximately $400,000 on the anticipated $1.7 million loan. That day, ProGrowth sent Fidelity & Guaranty a notice of assignment of the Annuity Contracts. On February 14, 2006, ProGrowth filed two financing statements with the Secretary of State of Missouri in connection with its security interest in the Annuity Contracts. On each financing statement, ProGrowth identified Christopher Hanson and the Agency as the debtor and accurately described the collateral as: "Fidelity and Guaranty Life Insurance Annuity Contract Number L9E00015 and Number L9E00016[.]" (Compl. ¶ 10.)

On March 20, 2007, ProGrowth filed this lawsuit, asserting a claim for a declaratory judgment decreeing that "ProGrowth's perfected security interest in the Fidelity & Guaranty Annuity Contracts is prior to and superior to any perfected security interest claimed by Defendants or any of their affiliates, successors or assigns in the same Fidelity & Guaranty Annuity Contracts." (Compl. ¶ 27.) Additionally, ProGrowth asserts a claim for conversion against Defendants. Defendants' now move for summary judgment on both ProGrowth's claims for declaratory judgment and conversion. ProGrowth now moves for summary judgment on its claim for declaratory judgment.

4

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Declaratory Judgment

Both ProGrowth and Defendants move for summary judgment on ProGrowth's declaratory judgment claim. The parties agree that in order to perfect security interests in the Annuity Contracts, Global One was required to comply with the applicable provisions of the Missouri Uniform Commercial Code ("Missouri UCC"), Mo. Ann. Stat. § 400.9-501, *et seq*. Under the Missouri UCC, "a financing statement is sufficient only if it: (1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; and (3) indicates the collateral covered by the financing statement." Mo. Ann. Stat. § 400.9-502(a). At issue here is whether the financing statements satisfied the third requirement.

The Missouri UCC provides that a financing statement "sufficiently indicates the collateral that it covers if the financing statement provides: (1) a description of the collateral pursuant to section 400.9-108; or (2) an indication that the financing statement covers all assets or all personal property." Mo. Ann. Stat. § 400.9-504[1]. The Missouri UCC also provides that "[a] financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." Mo. Ann. Stat. § 400.9-

---

[1]     In 2002, the state of Missouri adopted the current Mo. Ann. Stat. § 400.9-504 following the promulgation of revisions to the UCC (the "Revised UCC") by the National Conference of Commissioners on Uniform State Laws.

(Footnote Continued on Next Page)

506(a). The parties dispute whether Global One's September 2005 financing statements complied with the Missouri UCC and therefore whether they perfected security interests in the Annuity Contracts.

In particular, the parties dispute whether the errors in the description of the collateral in the September 2005 financing statements cause them to be "seriously misleading" under Mo. Ann. Stat. § 400.9-506(a). Additionally, the parties dispute whether the September 2005 financing statements perfected interests in "all assets or all personal property" of the debtor under Mo. Ann. Stat. § 400.9-504. Alternatively, Defendants contend that even if the Court finds that the September 2005 financing statements do not comply with the applicable Missouri UCC provisions, a genuine issue of material fact exists regarding whether ProGrowth had actual notice of Defendants' interests, which therefore precludes summary judgment in ProGrowth's favor.

### A.   Whether Defendants' September 2005 Financing Statements are "Seriously Misleading"

ProGrowth contends that the errors in the September 2005 financing statements render them "seriously misleading" and therefore ineffective to perfect a security interest in the misidentified collateral. Defendants, on the other hand, assert that the transposed characters of the Annuity Contract number in the September 8, 2005 financing statement was a "minor error." Further, Defendants contend that the September 2005 financing

---

(Footnote Continued From Previous Page)

statements' use of the wrong annuity issuer's name does not invalidate the financing statements because ProGrowth should have discovered the incorrect issuer's name based on Defendants' knowledge of the Annuity Contract numbers.

It is undisputed that the description of the collateral in the September 2005 financing statements contained errors that misidentified the collateral. Specifically, the financing statements misidentified the name of the insurance company issuing the Annuity Contracts. In addition, the September 8, 2005 financing statement included the wrong Annuity Contract number. These errors, taken together, are not minor. Courts have interpreted "minor errors" to include such things as the omission of the first digit of a number used to identify an automobile in a security agreement. *In re LMJ, Inc.*, 159 B.R. 926, 929 (D. Nev. 1993); *see also Maxus Leasing Group, Inc., v. Kobelco America Inc.*, No. 5:04-CV-518, 2007 WL 655779, *1 (N.D.N.Y. Feb. 26, 2007) (concluding that a financing statement was not seriously misleading where the only error was the omission of one digit of a crane's serial numbers and when the financing statement accurately described the year, make, and model of the crane and included an extensive list of the crane's attachments). While the misidentification of the Annuity Contract number in the September 8, 2005 financing statement alone may be minor, the September 2005 financing statements' misidentification of the company issuing the Annuity Contracts is not.

The purpose of filing a financing statement is to provide notice to subsequent creditors of assets that may already be encumbered by prior creditors. *Thorp Commercial*

8

*Corp. v. Northgate Indus., Inc.*, 654 F.2d 1245, 1252 (8th Cir. 1981). Here, an examination of the September 2005 financing statements would not put a potential creditor on notice that Global One may be asserting security interests in the Fidelity & Guaranty Annuity Contracts because the September 2005 financing statements specifically identified only Lincoln Benefit Life Annuity Contracts and the September 8, 2005 financing statement additionally cited the wrong Annuity Contract number. The Court finds that these errors render the September 2005 financing statements "seriously misleading." *See Aryeh v. Altman*, 829 N.Y.S.2d 47, 49 (N.Y. App. Div. 2007 (concluding that a financing statement that contained the wrong description of a painting was "seriously misleading"). As such, the September 2005 financing statements fail to perfect a security interest in the misidentified collateral. *See id.; In re Lynch*, 313 B.R. 798, 801 (Bkrtcy. W.D. Wis. 2004). The Court's conclusion is bolstered by the fact that Global One filed other financing statements regarding other Lincoln Benefit Life annuity contracts during September 2005, making it even more unlikely that the September 2005 financing statements could provide notice.

  **B.**  **Whether Defendants' September 2005 Financing Statements Perfected Interests in "All Assets or All Personal Property" of the Debtor**

Next, Defendants contend that the September 2005 financing statements perfected interests in "all assets or all personal property" of the debtor under Mo. Ann. Stat. § 400.9-504(2). Defendants assert that the current Mo. Ann. Stat. § 400.9-504 permits collateral descriptions in financing statements to allow a general reference to "all assets"

9

of the debtor. Defendants contend that the September 2005 financing statements contain two descriptive clauses—a supergeneric clause covering all of Hanson's assets and rights and a specific clause covering the particular Annuity Contract. Defendants contend that the specific clause was not necessary in light of the supergeneric clause's reference to all assets. Defendants further assert that regardless of any errors concerning the specific references in the September 2005 financing statements, those references were nonetheless subsumed by the independently sufficient reference to "all assets and rights" of the debtor in the financing statements.

ProGrowth, on the other hand, asserts that the September 2005 financing statements would not put a hypothetical creditor on notice that Global One was claiming an interest in "all assets or all personal property" of Hanson because: (1) the plain language of the September 2005 financing statements does not support such an interpretation; and (2) Defendants filed multiple financing statements identifying Hanson as debtor, each of which identified interests in specific annuity contracts.

The Court concludes that the plain language of the September 2005 financing statements does not put a hypothetical creditor on notice that Global One was claiming an interest in "all assets or all personal property" of Hanson. The September 8, 2005 financing statement states that it covers the following collateral:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether not owned or hereafter acquired or arising, and all proceeds and products in that certain Annuity Contract No.: LE900015 issued by Lincoln Benefit Life in the name of the Debtor . . . .

(Compl., Ex. C.)  The September 16, 2005 financing statement contains the same language except that it refers to Annuity Contract No. L9E00016.  Here, the language of the September 2005 financing statements does not indicate that the financing statements apply to "all assets or all personal property" of Hanson, but rather apply only to the "assets and rights of Debtor" "acquired or arising" in the "certain Annuity Contract[s.]" (*Id.*)  The Court's interpretation is supported by the fact that Defendants filed other financing statements on September 8 and 28, 2005, regarding other Lincoln Benefit Life annuity contracts for which Hanson was the debtor.  Under Defendants' interpretation, there would have been no need for Defendants to file other financing statements regarding other annuity contracts during the same month if one of the September 2005 financing statements was intended to cover "all assets or all personal property" of Hanson.

Further, even if Defendants did put creditors on notice in the September 2005 financing statements that it was claiming a security interest in all of Hanson's assets and rights, the Court concludes that such a statement would not overcome the fact that the September 2005 financing statements are seriously misleading.  Although the Missouri UCC permits a financing statement to include a supergeneric description of collateral, Defendants cite no authority to support their contention that the errors in the specific description of the collateral can be "subsumed" by a supergeneric reference to "all assets and rights" of the debtor.  Here, the September 2005 financing statements, on their face, gave potential creditors notice that Defendants may be claiming a security interest in

Annuity Contracts issued by Lincoln Benefit Life. Accordingly, on these facts, the Court finds that the September 2005 financing statements did not put potential creditors on notice that Defendants may be claiming a security interest in all of Hanson's assets.

### C. Whether ProGrowth Had Actual Notice

Defendants contend that even if the Court concludes that Defendants did not properly perfect their security interests, ProGrowth is still not entitled to summary judgment. Specifically, Defendants contend that ProGrowth cannot have priority over Defendants if ProGrowth knew of Defendants' security interests prior to providing a secured loan to Hanson and further asserts that a fact issue exists regarding whether ProGrowth had actual notice. In response, ProGrowth asserts that there is no applicable "actual notice" requirement in Missouri's revised Article 9 and points out that the cases on which Defendants rely in support of their actual-notice argument apply to the predecessor provision of Missouri's UCC.

The Court need not decide whether there is an "actual notice" requirement in Missouri's revised Article 9 because, even if there were, Defendants have not established a genuine issue of material fact regarding whether ProGrowth had actual notice. Here, Defendants make only a bare allegation that the evidence in the record "appears to establish that [ProGrowth] was – or potentially was" in possession of the Defendants' security agreements at the time it made the loan to Hanson. (Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 14.) Because Defendants have not cited any facts regarding ProGrowth's alleged knowledge of the September 2005 financing statements, Defendants

have not set met its burden of demonstrating a genuine issue of material fact. *See Krenik*, 47 F.3d at 957 (8th Cir. 1995). Therefore, the Court finds that ProGrowth is entitled to summary judgment on its claim for declaratory judgment. As such, the Court concludes that ProGrowth's perfected security interests in the Fidelity & Guaranty Annuity Contracts are prior to and superior to any security interests claimed by Defendants.

## III.   Conversion

Defendants assert that ProGrowth's claim for conversion should be dismissed based on Defendants' purported superior interest in the Annuity Contracts. The Court denies Defendants' request because, as stated above, the Court concludes that ProGrowth's security interests in the Annuity Contracts are prior to and superior to Defendants' interests.

### CONCLUSION

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. 8) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**.


Dated:  August 14, 2007         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court