# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ProGrowth Bank, Inc.,

        Plaintiff,

    v.

Wells Fargo Bank, N.A., and
Global One Financial, Inc.,

        Defendants.

Civil No. 07-1577 (DWF/AJB)

**MEMORANDUM
OPINION AND ORDER**

---

Robert C. Moilanen, Esq., Richard T. Ostlund, Esq., Shannon M. Awsumb, Esq., and
Larina A. Brown, Esq., Anthony Ostlund Baer & Louwagie, P.A., for Plaintiff.

Joseph C. Chancey, Esq., and Kelleen Huang Hubbs, Esq., Drew Eckl & Farnham, LLP,
and Jennifer E. Ampulski, Esq., Meagher & Geer, P.L.L.P., for Defendants.

---

## INTRODUCTION

This matter is presently before the Court pursuant to the motion of Defendants

Global One Financial, Inc., and Wells Fargo Bank, N.A., to enforce the Eighth Circuit's

mandate "and/or for partial judgment on the pleadings." Specifically, Defendants request

that this Court (1) "dismiss" Plaintiff ProGrowth Bank, Inc.'s Complaint and its recently

filed Counterclaim, and (2) grant declaratory judgment that Global One holds the superior

security interest in the relevant collateral. Defendants also move for Rule 11 sanctions.

For the reasons stated below, the Court construes Defendants' motion to enforce

the appellate mandate as a motion for judgment on the pleadings under Rule 12(c) and, as

such, substantially grants it in part, but denies without prejudice their motion for sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

In this ongoing dispute between creditors claiming priority for their respective security interests in the same collateral, ProGrowth–on remand from the Eighth Circuit's reversal of this Court's earlier decision in favor of ProGrowth–shifts its priority argument from the contention that the errors in Defendants' financing statements rendered them seriously misleading and thus inadequate to provide notice to other creditors such as ProGrowth (an argument that the Eighth Circuit rejected) to the assertion that the debtor never authorized the supergeneric "all asset" security interest employed by Defendants in their financing statements. In seeking enforcement of the appellate mandate, Defendants essentially assert that any such argument is (1) merely a repackaging of ProGrowth's earlier, now rejected argument and thus is precluded by law of the case, or (2) an argument that ProGrowth could have made earlier but did not and thus is waived.

## I.     The Debtor Grants Both Parties Security Interests in the Same Collateral

This action arises out of separate and unrelated loans that Global One and ProGrowth provided to Christopher Hanson and/or the agency he owns and operates, the Christopher Hanson Insurance Agency. Hanson secured the loans at issue by the same collateral–two annuity contracts with Fidelity & Guaranty Life Insurance Company and identified as "L9E00015" and "L9E00016," respectively. The annuity contracts were valued at $1 million.

On September 8, 2005, Global One and the agency entered into a Promissory Note and Security Agreement pursuant to which Global One loaned the agency $1 million. As security for the note, Hanson executed two Collateral Assignments of Annuity Contracts and Security Agreements, dated September 8, 2005, in which Hanson assigned his interest in these contracts to Global One. That same day, Wells Fargo, acting as collateral agent for Global One, filed a financing statement, in which it identified the "Debtor" as "Christopher J. Hanson" and misdescribed the collateral as follows:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising, and all proceeds and products in that certain Annuity Contract No.: LE900015 issued by Lincoln Benefit Life in the name of Debtor . . . .

(Doc. No. 17 (Baker Aff.), Ex. C.)

On September 16, 2005, Wells Fargo, acting as collateral agent for Global One, filed another financing statement, again identifying the debtor as "Christopher J. Hanson" and describing the collateral as follows:

> All of Debtor's right, title, and interest in and to, assets and rights of Debtor, wherever located and whether now owned or hereafter acquired or arising, and all proceeds and products in that certain Annuity Contract No.: L9E00016 issued by Lincoln Benefit Life in the name of Debtor . . . .

(*Id.*) Both of the September 2005 financing statements erroneously identified Lincoln Benefit Life rather than Fidelity & Guaranty as the issuer of the annuity contracts. Additionally, the September 8, 2005, financing statement incorrectly referenced the annuity number as "LE900015" instead of "L9E00015."

Then, in early 2006, Hanson approached ProGrowth seeking to obtain a loan for over $1.7 million and identified the same annuity contracts as collateral. On February 9, 2006, Hanson assigned his interest in these contracts to ProGrowth in order to obtain an advance of approximately $400,000 on the anticipated $1.7 million loan. That same day, ProGrowth sent Fidelity & Guaranty a notice of assignment of the annuity contracts. On February 14, 2006, ProGrowth filed two financing statements in connection with its security interest in those contracts. In each financing statement, ProGrowth identified Christopher Hanson and his agency as the debtor and accurately described the collateral as "Fidelity and Guaranty Life Insurance Annuity Contract Number L9E00015 and Number L9E00016." (Doc. No. 1 (Compl.) ¶ 10.)

ProGrowth filed this action in March 2007, asserting a claim for a declaratory judgment decreeing that ProGrowth's perfected security interest in the annuity contracts is superior to any perfected security interest claimed by Defendants in the same contracts. (*Id.* ¶ 27.) Additionally, ProGrowth asserts a claim for conversion against Defendants. (*Id.* ¶¶ 29-31.) In lieu of filing an Answer, Defendants promptly moved to dismiss ProGrowth's claims and to declare their security interest superior to that of ProGrowth. (Doc. No. 8.) With little or no discovery having occurred, ProGrowth then moved for summary judgment, claiming the undisputed facts compelled the conclusion that its security interest enjoyed priority over Defendants' interest. (Doc. No. 16 at 1-2 & n.2.)

## II.     This Court's Original Decision

In this diversity case governed by Missouri law, the issue initially presented to this Court was whether the errors in Defendants' September 2005 financing statements rendered them inadequate to provide notice to any competing creditors contemplating security interests in the same collateral. To perfect its security interests in the annuity contracts, Global One was required to comply with the applicable provisions of the relevant state law, the Missouri Uniform Commercial Code, Mo. Ann. Stat. § 400.9-501, *et seq*. Under the particular provision of the Missouri UCC relevant here, "a financing statement is sufficient only if it . . . (3) *indicates* the collateral covered by the financing statement." Mo. Ann. Stat. § 400.9-502(a) (emphasis added).

A financing statement sufficiently "indicates" the collateral that it covers if it provides either (1) a "*description* of the collateral pursuant to section 400.9-108;" or (2) an "*indication* that the financing statement covers all assets or all personal property" of the debtor. *Id.* § 400.9-504 (emphases added).[1] Any minor errors or omissions in a statement that "substantially" satisfies the requirements of Part 5 of Article 9 are not fatal unless they make the financing statement "seriously misleading." *Id.* § 400.9-506(a).

With respect to the first option for "indicating" the collateral–providing a "description" of the collateral–a description of property generally is sufficient, "whether or not it is specific, if it reasonably identifies what is described." *Id.* § 400.9-108(a).

---

[1]     In 2002, Missouri adopted the current version of Section 504 following the promulgation of revisions to the UCC (the "Revised UCC") by the National Conference of Commissioners on Uniform State Laws.

With respect to the second option for "indicating" the collateral–employing an "all asset" indication of collateral–while that approach is now a permissible option under Section 9-504(2) for purposes of a financing statement, use of such an all-encompassing (or "supergeneric") provision is not permitted to "describe" the collateral when granting a security interest as it "does not reasonably identify the collateral." *Id.* § 400.9-108(c). *Accord id.* § 400.9-203(b)(3)(A).

This Court ruled that taken together the various errors in the September 2005 financing statements–each statement's misidentification of Lincoln Benefit Life as the issuer and the September 8, 2005 financing statement's citation of the wrong contract number–were not minor and that an examination of the statements would not put a potential creditor on notice that Global One might be asserting security interests in the Fidelity & Guaranty Annuity Contracts. (Doc. No. 32 at 8-9.) This Court rejected Defendants' claim that the financing statements "contain two [independent] descriptive clauses" such that "any errors concerning the specific references" would not undermine the purportedly separate "all assets" description. (*Id.* at 10-11.) Rather, this Court interpreted the financing statements as employing a single integrated description of collateral–that is, that the collateral consisted of all of the debtor's rights in the particular annuity contracts. (*Id.*) In sum, this Court held that these errors rendered the September 2005 financing statements "seriously misleading," such that they failed to perfect a security interest in the misidentified collateral. (*Id.*)

This Court likewise denied Defendants' subsequent motion to alter or amend the judgment.  (Doc. No. 55.)  Defendants timely appealed from both orders.

## III.    The Court of Appeals Decision and Mandate

On appeal, the Eighth Circuit reversed, holding that Defendants' security interests were perfected because the financing statements they filed with respect to those interests were sufficient under Missouri law, particularly the requirement that such a statement sufficiently "indicate" the collateral so as not to be "seriously misleading."  *ProGrowth Bank, Inc. v. Wells Fargo Bank, N.A.*, 558 F.3d 809, 815 (8th Cir. 2009).

Recognizing that the issue of the sufficiency of the financing statements was one of notice to other subsequent creditors–and "not to 'identify the collateral and define property which the creditor may claim'"–the Eighth Circuit ruled that while the errors in the specific description of the collateral might possibly render the financing statements insufficient to provide notice, the alternative supergeneric description of "[a]ll of Debtor's right, title and interest in and to, assets and rights of Debtor" sufficed as an independent basis for notice to others.  *Id.* at 812-14.  Disagreeing with this Court's reading of the financing statements as consisting of a single integrated clause, the Eighth Circuit construed each financing statement as "contain[ing] two distinct phrases," that is, two "descriptive clauses [that] are independent from each other."  *Id.* at 814.  Because the errors in the descriptions of the collateral were confined to the specific description of the collateral in the financing statement, they could not undermine the generic description, which provided an independent basis on which to uphold the financing statements as not

7

seriously misleading. *Id.* The Eighth Circuit thus reversed the summary judgment in favor of ProGrowth and remanded the case to this Court "for further proceedings consistent with [the appellate] opinion." *Id.* at 815.

ProGrowth then filed a Petition for Rehearing and Suggestion for Rehearing En Banc, claiming that it should still prevail despite the Eighth Circuit's construction of the financing statement because the debtor never authorized an all asset security interest. The Eighth Circuit summarily denied that petition without comment. (Doc. No. 105.)

## IV.     The Proceedings on Remand

Shortly after the Eighth Circuit issued its opinion, Defendants filed an Answer and Counterclaim. (Doc. No. 97.) Pursuant to a scheduling conference held on April 16, 2009, and based on the parties' agreement, the Court issued an Order setting deadlines only for the completion of discovery and the filing of dispositive motions. (Doc. No. 111.) The Order did not address other issues such as setting deadlines for amending the pleadings.

ProGrowth then filed a "Reply to Defendants' Counterclaim and Counterclaim of ProGrowth Bank." (Doc. No. 112.) ProGrowth's Counterclaim for Declaratory Judgment contends that the "financing statements filed by Wells Fargo did not comply with Article 9, . . . because neither Wells Fargo nor Global One had a security interest in all assets or all personal property of Hanson when the financing statements were filed, making the financing statements unauthorized, void or ineffective," such that the defective financing statements "failed to perfect any security interest of Wells Fargo or

8

Global One in the Annuity Contracts." (Doc. No. 112, ¶¶ 15-16.) Although ProGrowth

formally raised this issue as a counterclaim in reply to the Defendants' counterclaim, it

also asserted it as an affirmative defense. (*Id.* ¶ 3.)

Defendants' present motions followed, contending that ProGrowth is simply trying

to evade the appellate mandate and get a second bite of the apple that the Eighth Circuit

has taken off of ProGrowth's plate.

## DISCUSSION

Defendants denominate their motion on the merits as one "to enforce mandate of

court of appeals and/or for partial judgment on the pleadings." This Court construes the

motion as one for judgment on the pleadings under Rule 12(c), seeking in particular to

enforce the appellate mandate. A party moving under Rule 12(c) is entitled to judgment

on the pleadings if "'no material issue of fact remains to be resolved and the movant is

entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528

F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803

(8th Cir. 2002)). This Court views "all facts pleaded by the nonmoving party as true and

grant[s] all reasonable inferences in favor of that party." *Id.*[2]

---

[2]     Although the procedural path of this action has been somewhat unusual, Rule
12(c) provides the appropriate avenue for pursuing the relief that Defendants seek.
Although Defendants often phrase the relief they seek as "dismissal" of ProGrowth's
Complaint and Counterclaim, it is clear that what they in fact seek is a judgment on the
merits of all current claims and counterclaims. Moreover, while discovery is ongoing, it
is limited to issues not relevant to the claims at issue here. *See infra* note 8. As the
parties had agreed in their earlier dispositive motions, the facts relevant to priority were

(continued...)

Defendants rely on the doctrine of law of the case, contending that "[t]he legal theory underlying ProGrowth's recently asserted 'counterclaim' was either: (1) asserted and rejected, or (2) not asserted and waived." (Doc. No. 131 at 1.) They further assert that even if ProGrowth's present Article 9 argument is properly before this Court, additional discovery is pointless because, as a matter of law, Defendants' security interest was properly perfected and thus enjoys priority over ProGrowth's interest. (*Id.* at 3-7.)

ProGrowth counters by arguing that the issue it presently pursues is genuinely new–and thus not barred by any aspect of law of the case–and that Defendants' motion is merely an attempt to prematurely terminate the discovery that ProGrowth contends is just now uncovering relevant facts, including evidence not only that Defendants' "security agreement did not create such an all-encompassing security interest" but also that Defendants "assist[ed] Hanson [in] defraud[ing] ProGrowth." (Doc. No. 122 at 1-2 & n.1.) ProGrowth thus alleges Defendants' motion contravenes Rule 56(f). (*Id.* at 7.)

## I.     Law of the Case and "the Mandate Rule"

The doctrine of law of the case involves several separate branches, but for present purposes only two need be discussed: (1) a district court's general reluctance to reconsider its own prior rulings, and, most importantly, (2) a district court's obligation to

---

[2](...continued)
established by the pleadings and the issues can be resolved as matters of law. (*E.g.*, Doc. No. 22 at 2 n.2.) ProGrowth's recent suggestion of fraud does not warrant further delay in disposing of the priority issue. *See infra* Section III.

adhere to an appellate mandate–the "mandate rule."  *See generally* 18B Charles Allen

Wright, *et al.*, *Federal Practice and Procedure* § 4478 (2d ed. 2002).

The basic principle of the mandate rule is that a district court is bound on remand

to adhere to the express rulings of its controlling appellate court as well as to any

necessary implications of such rulings.  *Id.* § 4478.3.  But "[w]hen further trial-court

proceedings are appropriate after remand, the appellate mandate commonly leaves the

trial court free to decide matters that were not resolved on appeal."  *Id.*[3]

---

[3]     The parties assert numerous propositions regarding law of the case that on their
face appear somewhat irreconcilable, at least when taken out of context.  This Court will
make no attempt at addressing each cited authority, but rather will simply note that much
of it is inapposite.  For example, while only the latter branch of law of the case–the
mandate rule–is at issue here, Plaintiff recites principles of discretion more applicable to
the former branch (presumably because that branch recognizes a district court's discretion
to modify prior rulings, albeit only its own prior rulings).  (*See, e.g.*, Doc. No. 122 at 11.)
But on remand from an appellate court, a district court "must" (absent a few narrowly-
defined exceptions not applicable here) follow an appellate mandate.  *Pearson v. Norris*,
94 F.3d 406, 409 (8th Cir. 1996) (stating that district court "is bound by the [appellate]
decree and must carry it into execution" as "district court 'is without power to do
anything which is contrary to the letter or spirit of the mandate construed in light of'" the
appellate opinion).  For their part, Defendants seem to conflate law-of-the-case doctrine
with aspects of claim and issue preclusion.  (Doc. No. 118 at 10-11 (citing *Poe v. John
Deere Co.*, 695 F.2d 1103 (8th Cir. 1982) (addressing preclusive effect of prior
employment discrimination action on subsequent separate action)); Doc. No. 128 at 10
n.1 (same).)  But such preclusion doctrines govern between separate actions, not within a
single action.  18B Wright, *et al.*, *supra*, § 4478, at 638-41.  Finally, the Court notes that
the proper application of the general principle of waiver is often dependent on its
particular context–for example, the principles governing whether an issue not raised in an
initial appellate brief may be raised in a reply brief might not govern whether an issue not
raised in an appeal may be raised on remand.

## A.     Issues Decided By The Court Of Appeals

Contrary to Defendants' claim that ProGrowth's current argument is foreclosed by the mandate rule, the Eighth Circuit did not rule expressly on ProGrowth's argument that the "all asset" security interest was not authorized, an issue which was not expressly presented to the court of appeals until ProGrowth filed its Petition for Rehearing.  "A court of appeals ordinarily cannot effectively consider matters that are not presented to it, and should be free to manage its own process of decision by refusing to decide some of the matters that are presented."  18B Wright, et al., *supra*, § 4478.3, at 750.  "The reach of the mandate is generally limited to matters actually decided.  A mere recital of matters assumed for purposes of decision and dicta are not part of the mandate."  *Id.* at 757.  Likewise, "[m]atters simply not considered also are likely to be outside the mandate."  *Id.* at 757-58.

Here, the present issue of whether the security interest that the debtor in fact granted Defendants "described" the collateral as extending to the full "all-asset" scope claimed by Defendants in their financing statements is different from the previous issue of notice that turned on the adequacy of the financing statements' "indication" of the collateral at issue.  The Eighth Circuit addressed and ruled on only the issue of whether the financing statements provided adequate notice–the only issue on which this Court had ruled.[4]

---

[4]     An appellate court generally does not rule upon issues on the merits that were not

(continued...)

As Defendants themselves note, the Eighth Circuit expressly asked ProGrowth's counsel as to the appropriate form of the remand should the court "conclude that the Defendants' security interests were superior to those of" ProGrowth–that is, whether the court should specifically instruct this Court to enter summary judgment for Defendants or remand for further proceedings. (Doc. No. 131 at 2.) In reversing the judgment for ProGrowth, the Eighth Circuit simply "remanded for further proceedings consistent with" its opinion. By issuing such a "general remand," *Republican Party of Minnesota v. White*, 361 F.3d 1035, 1042-43 (8th Cir. 2004), *vacated on other grounds*, (8th Cir. May 25, 2004), that is, one that neither directed this Court to take any particular action, instructed this Court to consider any specific issues (and thus implicitly *only* such issues), nor stated that it expressly foreclosed consideration of any particular issues–the Eighth Circuit presumably accorded this Court broad leeway to proceed, subject only to the requirement of adhering to the ruling on the particular issue actually decided by the Eighth Circuit. In sum, this Court understands the Eighth Circuit's opinion to address only the issue of the adequacy of the financing statements in "indicating" the collateral.

---

[4](...continued)
decided below. *E.g.*, *Anderson v. Unisys Corp.*, 52 F.3d 764, 765 (8th Cir. 1995); *State of North Dakota v. Merchants Nat'l Bank & Trust Co.*, 579 F.2d 1112, 1115 (8th Cir. 1978). In addressing the parties' earlier motions, this Court intended to rule only upon the issue regarding the adequacy of the financing statements, not also upon any issues regarding the scope of the underlying security agreements. The Court believes any fair reading of its decision would be consistent with that limited intent.

Defendants counter by noting that the Eighth Circuit began its analysis by stating that

> [t]he parties agree the priority of the Defendants' security interest is dependent upon whether their interests are perfected in accordance with Article 9 of the Missouri Uniform Commercial Code ("Missouri UCC"), *Missouri Revised Statute § 400.9-101-400.9-710.*

(Doc. No. 156 at 20-21.)   Defendants' textual argument almost surely reads too much into the intent of the Eighth Circuit.  The passage on which Defendants rely most likely is simply a convenient shorthand for introducing the body of governing law (Missouri's codification of Revised Article 9 of the UCC) rather than any indication that the court was addressing and ruling on the question of whether the debtor authorized an "all asset" security interest in addition to the issue of whether the creditor's financing statement sufficiently "indicated" the collateral without being "seriously misleading."[5]  The mere fact that the court referenced security interests in its discussion of the requirements for financing statements is hardly surprising because the purpose of such statements is to put other potential creditors on notice of existing security interests.  But the court did not thus address, much less expressly rule upon, whether the debtor here authorized an "all asset" security interest.

---

[5] The court's only reference to the legal requirements governing the former issue is its observation that a "broad, generic description" of collateral in the form of "all assets or all personal property" would be "insufficient to describe collateral in a security agreement."  *Id.* at 813.  And the court made this observation only in comparison to the less demanding requirements for "indicating" collateral in a financing statement.  *Id.*

Nor can it fairly be implied. As the Seventh Circuit has clarified, an appellate mandate must be construed consistently with the court's holding. *Moore v. Anderson*, 222 F.3d 280, 283 (7th Cir. 2000) ("The reach of the mandate is coextensive with the reach of our holding, so 'observations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations.'"). Here, the Eighth Circuit held only that "the Defendants' financing statements are not seriously misleading, and, as such, they are sufficient to perfect Defendants' security interests." *Id.* at 815. Such a holding addresses only the sufficiency of the financing statements, not any other issues under Article 9.

## B.    Waiver

The issue thus reduces to waiver–whether ProGrowth has somehow waived its ability to pursue its present issue even though the Eighth Circuit did not expressly rule on it. Defendants rely primarily on *In re MidAmerican Energy Co.*, 286 F. 3d 483 (8th Cir. 2002), seemingly contending that ProGrowth's present issue cannot be addressed on remand regardless of whether it was decided by the Eighth Circuit. In other words, if the Eighth Circuit had in fact addressed the issue, then this Court is bound by that decision (a principle with which this Court has no disagreement), but if it did not address it, then ProGrowth has waived any right to present the issue on remand (an understanding of the wavier rule that appears too broad).

*In re MidAmerican Energy* presented a contract dispute in which the plaintiff claimed that certain payments that the defendant had been making were in fact required

under the contract and the defendant counterclaimed to recover its prior payments. In the first appeal, the Eighth Circuit ruled that the agreement did not obligate the defendant to make such payments, but left unresolved the defendant's counterclaims regarding whether it may recover the payments it already had made. 286 F.3d at 485.

In the second appeal the Eighth Circuit ruled that on remand the plaintiff could not file a second amended complaint adding claims–cast in terms of (1) contract modification (or a separate contract), (2) quantum meruit/unjust enrichment, (3) promissory estoppel, and (4) contract reformation–that simply recast the plaintiff's previous allegations based on contract and thus "all devolve into exactly the same claim that was before" the court in the first appeal so as to be barred by law of the case. *Id.* Because the court had ruled in the first appeal that the defendant "had no obligation under contract or any other separate agreement, equitable or otherwise, to make" certain payments, the plaintiff was now "foreclosed from amending its complaint to include new theories of recovery on these issues." *Id.* at 487. The Eighth Circuit explained that the plaintiff "is now foreclosed from raising in a second amended complaint alternate theories of liability" where "[a]t no prior time during the pendency of this litigation in either the district court or in this court did [it] raise alternate allegations regarding any separate agreement or equitable theory of liability regarding [the defendant's] obligation to pay" the disputed costs. *Id.* at 487-88. In sum, *MidAmerican Energy* only prohibits the party who has lost on appeal from simply reframing under different–and previously unasserted–legal theories the same claim it

initially brought so that it may continue to pursue it on remand despite the appellate ruling.

But the Eighth Circuit also clarified that the scope of waiver under the mandate rule did not sweep so broadly as to always preclude on remand any and all issues not expressly addressed by its appellate opinion.  In fact, the court expressly ruled that the defendant's second and third counterclaims based on restitution and estoppel were not before it in the first appeal and thus remanded for litigation of such counterclaims and "all other outstanding claims"–that is:  (1) the other claims of the plaintiff's Amended Complaint; (2) the defendant's other contingent counterclaims, "which were not certified for appeal by the district court nor raised by either party in their" summary judgment motions; and (3) any defenses the plaintiff might raise in response to the defendant's counterclaims.  *Id.* at 485 & n.1.  As the court reiterated, on remand the issues "left for the district court are whether [the defendant] may recover payments already made to [the plaintiff], under theories of contract or equity, and the remaining issues set forth in the parties' pleadings, not taken up on appeal or left unresolved by our reversal of the district court's grant of partial summary judgment in favor of [the plaintiff]."  *Id.* at 488.

Here, it is far from clear that the issue Plaintiff now presses–whether the debtor authorized an "all asset" security interest–is simply the repackaging in the garb of new legal theories of the same claim already ruled upon by the Eighth Circuit–that is, whether the financing statements included a separate "all asset" provision that sufficed to put other creditors such as Defendants on notice regardless of the factual errors in the separate,

more specific provision in those statements.  Rather, such questions seem to plausibly present two separate sub-issues of the overall Article 9 priority question.

Moreover, unlike the plaintiff in *MidAmerican Energy*, ProGrowth did not first raise its authorization question on remand.  As Defendants themselves contend, "ProGrowth filed this action over two years ago, seeking a declaratory judgment that Global One's earlier filed financing statements . . . were ineffective because:  (1) they contained 'seriously misleading' descriptions of the collateral; and (2) the all assets language . . . was unauthorized."  (Doc. No. 118 at 2; *accord id.* at 3-4 (citing ProGrowth's summary judgment materials).)  Moreover, ProGrowth did not assert these issues as two separate bases each of which would be sufficient alone to defeat Defendants' claim of priority.  Rather, ProGrowth relied on the *fact* that the "all asset" provision was not supported by the narrower terms of the security interest in order to support its *legal* argument that the financing statement should not be construed more broadly than the underlying security interest.[6]  This Court understands such an argument to be different from the argument that a financing statement–once it is construed to

---

[6]      In support of its summary judgment motion, ProGrowth argued that its narrow "interpretation of the September 2005 financing statements is also supported by the fact" that "Hanson did not assign to Global One rights, title and interest to 'all assets or all personal property' of Hanson."  (Doc. No. 16 at 15.)  Likewise, in its opposition to Defendants' motion to dismiss, ProGrowth again made precisely the same argument–that the financing statements should be construed narrowly to be consistent with the limited scope of the security interests.  (Doc. No. 22 at 9-10.)  Finally in its reply in support of summary judgment, ProGrowth reiterated its point that Defendants' expansive interpretation of the financing statement "is refuted by . . . the limited scope of the actual security interests Wells Fargo acquired from the debtor."  (Doc. No. 25 at 5.)

include a separate "all asset" clause (as the Eighth Circuit has now ruled here)–should be deemed void because it overreaches by exceeding what the debtor authorized. Because ProGrowth won on the financing statement issue before this Court, ProGrowth had no reason or basis to raise the authorization issue in defending the judgment in its favor on appeal. (Had ProGrowth anticipated defeat before the Eighth Circuit by including an argument in the alternative regarding the authorization issue, the Court of Appeals would likely have refrained from addressing it because it had not been passed upon by this Court. *See supra* note 4.) Only upon having that judgment reversed by the Eighth Circuit did ProGrowth have occasion to press its authorization argument as a separate basis to establish its own priority. But the fact that it did so in its Petition for Rehearing once it lost on the notice issue before the Eighth Circuit hardly triggers the mandate rule because the appellate court summarily denied that petition without comment. *United States Fid. & Guar. Co. v. Concrete Holding Co.*, 168 F.3d 340, 342 n.4 (8th Cir. 1999).

In *United States Fidelity & Guaranty Co.*, the Eighth Circuit addressed whether the district court's decision on remand to award prejudgment interest to the defendant failed to comply with the appellate court's prior mandate. 168 F.3d 340 (8th Cir. 1999). The jury had rendered a verdict in favor of the plaintiff and a verdict in favor of one of the defendants on its cross-claim against the other defendant as well as on its claim against the third-party defendants. *Id.* at 341. The district court, however, then denied the plaintiff's request for prejudgment interest, and thus also the defendant's contingent request for similar relief on its cross-claim and third-party claim.

19

In the first appeal, the Eighth Circuit reversed the denial of the plaintiff's request for prejudgment interest and remanded with instructions to award such interest, but otherwise affirmed the judgment "without further discussion." *Id.* On remand, the district court awarded the plaintiff the prejudgment interest as directed by the court of appeals and then also awarded the defendant prejudgment interest in the same amount on its cross-claim and third-party claim. The third-party defendant then appealed, claiming that the district court was precluded by the appellate mandate from awarding such interest to the defendant.

The Eighth Circuit rejected that expansive view of its mandate, concluding that the denial of the defendant's "contingent motion for prejudgment interest was not an issue in the first appeal, was not considered by this court, and therefore could not have been within the scope of this Court's . . . opinion and mandate." *Id.* at 342.[7] The court rejected the argument that because the defendant "failed to raise the issue of prejudgment interest in the first appeal," it "thereby abandoned any claim it may have had for prejudgment interest." *Id.* The court recognized that the defendant "had no reason to appeal the District Court's denial of its initial motion for prejudgment interest because [the

_____

[7]     The Eighth Circuit came to this conclusion even though in the first appeal the defendant, which had cross-appealed, "stated in its notice of appeal it was seeking prejudgment interest against [the third-party defendant] in the event [the plaintiff] was awarded prejudgment interest against [the defendant]." But as the court explained, the defendant "never raised in its appellate brief the denial of its contingent motion for prejudgment interest." *Id.* at 342 (noting that "an appellant's brief on appeal fixes the scope of the issues to be reviewed on appeal").

Defendant's] right to prejudgment interest was not at issue at the time of the first appeal." *Id.*

Similarly, ProGrowth here had little, if any, basis when pursuing the notice issue regarding the adequacy of the financing statements to also pursue the independent issue of whether the debtor ever granted Defendants a broad "all asset" security interest–an issue that it would not have to raise unless and until the existing ruling it was defending would be reversed. Because ProGrowth obtained a favorable ruling from this Court on the notice issue–which was sufficient to support the declaratory judgment of priority that it sought–it thus properly confined its argument on appeal to defending this Court's decision on notice. But the fact that the appellate ruling was thus confined to the notice issue hardly suggests that ProGrowth waived a different issue that had not been litigated to an appealable decision at that stage of the case.

Although it would thus appear that the mandate rule does not preclude ProGrowth's current argument, ultimately this Court need not conclusively resolve such fine questions regarding the application of that rule because even if ProGrowth is thus permitted to pursue its argument that the debtor never authorized a supergeneric "all assets" security interest, any such argument is unsuccessful as a matter of law.[8]

---

[8] Although ProGrowth contends resolution of this issue must await the completion of discovery, the only relevant fact is that the debtor granted Defendants a security interest in the annuity contracts at issue–a fact about which there has never been a dispute. Thus, the present issue became ripe for adjudication once the Eighth Circuit decided that Defendants' financing statements contained two separate clauses, including

(continued...)

## II.     UCC Article 9 Issues

The revised version of UCC Article 9 adopted by Missouri includes an intentional difference between the requirements for a security agreement and the requirements for a financing statement.  9B William B. Hawkland, *et al.*, *Uniform Commercial Code Series* [Rev] § 9.504:1 (2001).  "While a security agreement must provide a 'description of the collateral,' a financing statement need only 'indicate' the collateral that it covers."  *Id.* The security agreement must contractually define the specific collateral but a financing statement need only provide third parties with notice "of the possible existence of an outstanding encumbrance."  *Id.*

Here, ProGrowth now contends that Defendants' filing of the overbroad financing statement–purporting to claim an interest in all assets of the debtor even though the debtor granted an interest only in the annuity contracts at issue–was "unauthorized" and, therefore, "ineffective" in its entirety.  (Doc. No. 122 at 8.)  ProGrowth thus presses for an all-or-nothing approach to the validity of financing statements under which an overbroad "all asset" clause invalidates the entire statement (or at least the entirety of the "all asset" clause where such a clause accompanies a more specific indication of collateral).

---

[8](...continued)
an "all asset" indication that put ProGrowth on notice of the possibility of a security interest in those contracts.

But where, as here, the content of a financing statement exceeds what the debtor authorized in the security agreement, the "filed record is effective *only to the extent that it was filed* by a person entitled to do so under revised Section 9-509." 9B Hawkland, *et al.*, *supra*, [Rev] §9-510:3. As the statutory comments explain, if the "Debtor authenticates a security agreement creating a security interest in Debtor's inventory in favor of Secured Party," and the "Secured Party files a financing statement covering inventory and accounts," the "statement is authorized insofar as it covers inventory and unauthorized insofar as it covers accounts." Mo. Ann. Stat. § 400.9-509, cmt. 4, ex. 1. *Accord id.* § 400.9-510, cmt. 2, ex. 1.

Undeterred, ProGrowth contends that such partial authorization would not apply where, as here, the unauthorized portion of a financing statement purports to claim an interest in "all assets" or "all property" of the debtor rather than simply another specified type of collateral such as accounts. But the Court fails to see any principled distinction between the two scenarios. If an overbroad financing statement that claims an interest in certain specified property beyond what the security agreement actually grants the secured party is nonetheless partially valid–that is, valid to the extent that the scope of the security agreement actually supports part of what the statement claims–there is no discernible reason why the same principle should not govern to likewise partially validate a financing statement that exceeds the scope of the security agreement by erroneously claiming an interest in "all assets" of the debtor in addition to accurately claiming an interest in certain specified property.

And neither do the two authorities that this Court has located in its own research discern any principled difference.[9]  As a leading commentator notes, an overbroad financing statement claiming an interest in "'all assets of the debtor'"–even though the debtor granted only a security interest in inventory–"is effective *only to the extent*" it is actually authorized.  9B Hawkland, *et al.*, *supra*, [Rev.] § 9-510:3.  "[T]he result that the comment brings about is sound, and the comment is likely to be followed."  *Id.*

In fact, the only relevant case found by this Court seems to support that very same conclusion.  In *In re Lull*, the Bankruptcy Court addressed a situation where the debtor granted a "security interest in 'all personal property and other assets' of [the debtor] and specifically listed all commonly known categories of personal property, including goods, accounts, money, chattel paper, general intangibles, instruments, and the proceeds thereof."  386 B.R. 261, 264 (D. Haw. 2008).  The secured party recorded a financing statement describing the collateral as

> "All assets and all personal property of the Debtor (including, without limitation, fixtures), whether now owned or hereafter acquired or arising, and wherever located, and all proceeds and products thereof."

*Id.*

The court concluded that the secured party properly perfected a security interest in certain rare coins and their auction proceeds, because Hawaii's version of Article 9 of the

---

[9]      While Defendants rely on the comments to Sections 509 and 510, which address an analogous issue, neither parties' briefing includes any citations to authority on the precise point of including in a financing statement an unauthorized "all asset" indication as well as an authorized indication of more specifically defined property.

UCC, like Missouri's version at issue here, permitted "such supergeneric descriptions of collateral" in financing statements even though "a similarly broad description in a security agreement is not sufficient for a security interest to be enforceable." *Id.* at 266. Because the security agreement's identification of the collateral as including "goods, accounts, money, chattel paper, general intangibles and instruments" sufficiently described the collateral by both category and type, "[i]t therefore sufficiently described the collateral." *Id.* Thus the debtor "properly perfected its security interest in the coin collection by filing a financing statement covering all of [the debtor's] personal property." *Id.* at 268.

Granted, the financing statement at issue in *Lull* included only the single clause employing the supergeneric "all asset" option. But a creditor need not employ both options in the alternative. Furthermore, while the security agreement at issue in *Lull* appears broader than that at issue here insofar as in *Lull* it extended to numerous types and categories of assets, it was not construed to consist of a mere "all assets" description, as the court expressly noted that such a security interest would not be proper under Revised Article 9. Thus, the "all asset" clause employed in the financing statement would appear to be broader than the more limited scope of the security interest. Nevertheless, the court held the financing statement valid to perfect an interest in the particular type of property at issue, which was specifically within the range of the particular assets described in the security agreement.

Here, too, the supergeneric clause in the financing statement–although overbroad in terms of what the debtor actually authorized–suffices to have perfected Defendants' security interest in the annuity contracts. Because such a supergeneric clause is valid, it put ProGrowth on notice to inquire further as to the actual existence of any prior security interests in whatever property the debtor might have owned. Moreover, because the collateral at issue here has always been confined to these particular contracts, any question as to whether the debtor might have granted Defendants a security interest in other specified assets (or even in assets amounting in effect to all of the debtor's property) is simply irrelevant. In sum, Defendants are entitled to judgment on their counterclaim seeking a declaratory judgment of priority, with their claim for additional relief under 28 U.S.C. § 2202 remaining for adjudication.

With respect to ProGrowth's conversion claim, it would appear that any such claim would require (at a minimum) that ProGrowth in fact held an interest in the property allegedly converted. ProGrowth alleged that Defendants converted the annuity contracts and seeks either disgorgement of those contracts or damages. (Doc. No. 1 (Compl.) ¶¶ 30-31.) As this Court has ruled that Defendants' security interest in those contracts enjoys priority over any comparable interest of ProGrowth, Defendants are also entitled to a judgment on the conversion claim.[10]

---

[10] This Court presently takes no position on the question of whether ProGrowth could properly maintain any comparable claim for conversion if and when ProGrowth substantiates and formally pleads a claim for fraud. *See infra* Section III.

### III.    Discovery and ProGrowth's Recent Suggestions of Fraud

The only remaining question is whether ProGrowth's recent suggestion–it does not yet amount to a formal motion to amend the pleadings to add a claim–that this action, particularly the ongoing discovery, should proceed because Defendants "were willing conspirators in Hanson's efforts to bilk ProGrowth" and have participated "in assisting Hanson to defraud ProGrowth." (Doc. No. 122 at 2 & n.1.) At the hearing on the present motions, Defendants suggested that discovery be stayed pending this Court's decision. (Doc. No. 156 at 79.) ProGrowth not only disagreed, but stated that the existing period should be extended. (*Id.*) In essence, ProGrowth seeks relief under Rule 56(f).

The Court notes that because the parties had initially presented this dispute as one of law that could be decided on the pleadings without discovery–a straightforward priority battle turning largely on the respective financing statements–no scheduling order was entered before this Court issued its August and December 2007 rulings. Nor was any such order entered in the interim to govern the remaining pretrial proceedings while those orders were appealed. Only on April 17, 2009, just after the appellate mandate issued, did this Court issue any such order, and then only a minimal directive setting deadlines for the conclusion of discovery and the filing of dispositive motions, but without addressing the issue of amending the pleadings. (Doc. No. 111.) Under the existing framework–one which was "[b]ased on the parties' agreement"–all discovery must be concluded by October 15, 2009, and all dispositive motions filed and served by December 15, 2009. (*Id.*)

In light of this Court's rulings regarding the priority of Defendants' security interests, additional discovery regarding the various Article 9 issues would appear to be futile. But insofar as Defendants agreed–after they prevailed on appeal in reversing this Court's declaratory judgment for ProGrowth–to conduct discovery through October 15, 2009, it is far from clear that the course of that discovery, even though Defendants assert it was intended to relate to their claim for additional relief under 28 U.S.C. § 2202 (Doc. No. 131 at 5 n.1), has been somehow improper or entirely irrelevant so as to warrant its premature termination.

Accordingly, although as the action is presently framed no fraud claim has been formally asserted by ProGrowth, the Court will permit–due to the particular circumstances of how this action has unfolded–discovery relating to fraud, as well as that relating to the remaining relevant issues, through the rest of the previously-specified period. If, after October 15, 2009, ProGrowth believes further discovery is needed, the Court will entertain such a motion at that time. Likewise, upon the completion of discovery, the Court will entertain a properly-supported motion to amend the Complaint.

## IV.  Sanctions

Defendants also move for sanctions, essentially contending that ProGrowth's positions on the merits are legally untenable and therefore frivolous for purposes of Rule 11. (Doc. No. 126.) This Court shares Defendants' view that the parties' priority dispute is a relatively simple one (or at least started out as one) that has already involved several years of litigation before this Court, as well as an appeal, on remand from which

the proceedings have continued. While Defendants' frustration is thus perhaps understandable, the Court declines to grant Defendants' present motion for sanctions.

As discussed above with respect to Defendants' other motion, the Eighth Circuit did not expressly rule on ProGrowth's present Article 9 authorization argument and it is far from clear that ProGrowth could be deemed to have waived the right to litigate that issue on remand.[11] Although ProGrowth nevertheless cannot prevail on its present argument, its position was not so frivolous so as to warrant Rule 11 sanctions. While Defendants argued for a logical extension of principles articulated in the statutory comments, they cited no judicial or other authority in direct support of the precise issue of whether a financing statement that includes an unauthorized "all asset" provision in addition to an authorized provision indicating the particular collateral is nevertheless effective to the extent of the authorized provision. Moreover, ProGrowth's argument in opposition was not frivolous in light of the fact that the particular issue arises only as the result of the relatively-recent change reflected in the revised version of Article 9. Not surprisingly, this Court's independent research disclosed only one analogous decision and while it is adverse to ProGrowth, that decision is not binding on this Court.

---

[11] The Court notes, however, that ProGrowth's current position that the authorization issue was "first raised" in its Petition for Rehearing with the Eighth Circuit is not a model of consistency and candor given that ProGrowth repeatedly raised during the initial round of dispositive briefing before this Court the fact that the debtor had not granted Defendants an "all asset" security interest. *See supra* note 6. In short, ProGrowth could have better explained that it is now making use of previously-raised *facts* in service of a different *legal* argument on a related but distinct issue.

Nonetheless, as is this Court's usual practice, the Court reserves the right, pursuant to its inherent authority, to award fees and costs upon the conclusion of this action depending on the Court's evaluation of whether either party asserted claims or defenses in a manner that caused unnecessary delay or needlessly increased the costs of this litigation.

## CONCLUSION

In the Court's view, the mandate rule branch of law-of-the-case doctrine does not preclude ProGrowth's current argument. Nevertheless, Defendants are entitled to a declaratory judgment regarding the superiority of their security interest in the annuity contracts and thus also on ProGrowth's claim for conversion. (Because Defendants seek judgment on the pleadings under Rule 12(c), dismissal is not the appropriate remedy.) With respect to the few remaining matters, the parties may complete discovery at least through the remaining period previously ordered. Although a Rule 11 sanction is not appropriate at this juncture, as noted above the Court reserves its right to award fees and costs upon the completion of this action.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Enforce Mandate of Court of Appeals and/or for Partial Judgment on the Pleadings (Doc. No. 116) is **GRANTED IN PART** (to the extent that it seeks a declaratory judgment of priority and judgment with respect to ProGrowth's claim for conversion) and **DENIED IN PART** (to the extent that it seeks dismissal of ProGrowth's Complaint, and any of its claims or its counterclaim); and

2.      Defendants' Motion for Sanctions (Doc. No. 126) is **DENIED WITHOUT**

**PREJUDICE**.

Dated:  September 14, 2009               <u>s/Donovan W. Frank</u>
                                              DONOVAN W. FRANK
                                              United States District Judge